DANIEL R. DOMÍNGUEZ, U.S. District Judge
Pending before the Court are Defendants' Motion for Summary Judgment (Docket No. 83), Plaintiff's Response to Motion for Summary Judgment (Docket No. 94), and finally Defendants' Reply to Plaintiff's Response to Motion for Summary Judgment (Docket No. 101). For the reasons set forth below, Defendants' Motion for Summary Judgment is hereby GRANTED .
I. FACTUAL AND PROCEDURAL HISTORY
On September 1, 2008, Humana Health Plans of Puerto Rico, Inc. ("Humana Health"), Humana Health Insurance of Puerto Rico, Inc. ("Humana Insurance") (jointly, "Humana") and Team Care Infusion Orlando, Inc. ("Teamcare") entered into an Ancillary Services Agreement ("Agreement"). (Docket No. 86, Exhibit B). Pursuant to the terms of the Agreement, Teamcare was authorized to provide services to Humana members enrolled in the Government of Puerto Rico's Reform Program and the Medicare Programs. (Id. ) The two plans are from separate jurisdictions. The Reform program is from the Government of Puerto Rico laws and regulations, while the Medicare Program is federal in nature. The Agreement states that all payment of claims shall be made in accordance with applicable Commonwealth of Puerto Rico and federal statutes and regulations, applicable to each one of the two sovereign governments. (Id. ) Additionally, the Agreement specifies that a provider may challenge any denial or payment of a claim to Humana within 45 days of payment. (Id. ) If the provider challenges a claim, Humana will review the claim and render a final decision with respect to the claim within 30 days of receipt of such information. (Id. )
On March 4, 2011, Teamcare filed an administrative complaint against Humana Health before the Health Insurance Administration of Puerto Rico ("ASES" by its Spanish acronym), in which Plaintiff asserted that Humana Health breached the terms of the Agreement by not paying certain claims from October 2009 to July *432 2010. (Docket No. 86, Exhibit C). Teamcare alleged that according to the terms of the Agreement between the parties "TeamCare would provide specialty pharmacy services for members of Humana, more specifically Puerto Rico Reforms members." (Id. ) Additionally, Plaintiff alleged that "[d]uring the time that TeamCare provided services (medications) to the Reform members that Humana was responsible to manage, Humana continuously breeched the terms of said agreement..." (Id. ) Teamcare requested damages for $105,623.73, which according to the administrative complaint, "represents only the contractual fees for services that TeamCare provided to members of Humana's Reform Program." (Id. at 2). Finally, the administrative complaint contained a handwritten address at the end of its second page specifying that Teamcare's address was in Sanford, Florida. (Id. ) On March 21, 2011, ASES issued a Notification of Complaint to the parties and set a deadline for Humana to file its answer. (Docket No. 102, Exhibit P).
Subsequently, on June 16, 2011, Teamcare's President, Mark Schneider, and Humana representatives attended a status conference at ASES. (Docket No. 86, Exhibit D). During the hearing, Teamcare provided Humana with a document that contained a list of unpaid claims, which Humana agreed to evaluate. (Id. )
In response, on September 26, 2011, Humana Health provided to Mr. Schneider an Excel spreadsheet evaluating the claims Teamcare previously delivered (the "First Evaluation".) (Docket No. 86, Exhibit E). The First Evaluation analyzed fifty five (55) individual Reform claims for services from 2009 and 2010. (Id. ) Additionally, Humana detailed in the First Evaluation whether each claim had been paid, paid in part, denied, and denied in part, in addition to the reasons for denial. (Id. ) Following Humana's position, on January 3, 2012, Mr. Schneider of Teamcare wrote an email to Humana stating that the First Evaluation contained information that did not merit denials and cited the outstanding balance due to Teamcare in the spreadsheet. (Docket No. 86, Exhibit H). Mr. Schneider also requested copies of the cancelled checks that were referenced in the spreadsheet. (Id. ) In response, Humana provided to Mr. Schneider copies of the cancelled checks. (Docket No. 86, Exhibit J).
On November 1, 2013, more than ten months thereafter, ASES issued a Resolution dismissing Teamcare's administrative complaint for procedural inactivity since July 25, 2011. (Docket No. 86, Exhibit K). The ruling contained an additional notice informing the party adversary affected by the decisions of its right to seek reconsideration within twenty (20) days or appeal ASES's determination before the Puerto Rico Court of Appeals within thirty (30) days. (Id. ) ASES notified the Resolution to Humana's representatives and to Teamcare's Puerto Rico representative at his local address. (Id. at 2).
Next, on October 1, 2014, Teamcare filed the present action for breach of contract against Humana. (Docket No. 1). On December 4, 2014, Humana responded to the complaint by filing a Motion to Dismiss based primarily on res judicata grounds and, in the alternative, that the claim was time barred. (Docket No. 24). While the Motion to Dismiss was pending, on May 27, 2016, Teamcare provided Humana with another list of the claims at issue for Humana to review. (Docket No. 86, Exhibit L). Accordingly, on July 11, 2016, Humana sent Teamcare another Excell spreadsheet evaluating the claims delivered to them (the "Second Evaluation".) (Docket No. 86, Exhibit M). On September 4, 2014, this Honorable Court issued an opinion denying *433 in part and holding in abeyance in part Defendants' Motion to Dismiss . (Docket No. 35). Specifically, this Court held that, although all the requirements for res judicata were met in this case, there was a public policy exception in Puerto Rico to its application in situations where, as here, a case was dismissed for lack of prosecutions. (Id. ) Additionally, this Court found that the three year statute of limitations period established in Article 1867 of the Civil Code of Puerto Rico, 31 L.P.R.A. § 5297 was tolled in the instant case by the filing of the administrative complaint before ASES. (Docket No. 46).
Accordingly, the parties proceeded to conduct discovery. Humana served Teamcare with a series of interrogatories asking Teamcare to "provide copy of the claims", "evidence of submission of each claim to Humana" and "a copy of any response and/or denial of payment issued by Humana for each claim". (Docket 86, Exhibit N at 5). Moreover, Humana asked Teamcare to state whether it was in agreement with Humana's evaluation of each claim and, if not, to provide the reasons for disagreement and specific evidence to support its position. (Id. at 6). Teamcare responded to Humana interrogatories by providing the following documents: (i) failure to pay claims, including HCFA forms, (ii) EOPs, (iii) Account Receivable Reports and related documents evidencing payment and non-payment of claims, (iv) correspondence between the parties, and (v) miscellaneous documents supporting Plaintiff's claims. (Docket 86, Exhibit O).
On June 16, 2017, Humana filed a Motion for Summary Judgment . (Docket No. 83). Teamcare then filed its Response to the Motion for Summary Judgment on July 20, 2017 (Docket No. 94), to which Humana replied on August 16, 2017. (Docket No. 102).
II. STANDARD OF REVIEW FOR SUMMARY JUDGMENT MOTIONS
Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be entered where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) ; see Celotex Corp. v. Catrett, 477 U.S. 317, 324-325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Pursuant to the clear language of the rule, the moving party bears a two-fold burden: it must show that there is "no genuine issue as to any material facts;" as well as that it is "entitled to judgment as a matter of law." Veda-Rodriguez v. Puerto Rico, 110 F.3d 174, 179 (1st Cir. 1997). A fact is "material" where it has the potential to change the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "genuine" where a reasonable jury could return a verdict for the nonmoving party based on the evidence. Id. Thus, it is well settled that "the mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment. Id.
After the moving party meets this burden, the onus shifts to the non-moving party to show that there still exists "a trial worthy issue as to some material facts." Cortes-Irizarry v. Corporacion Insular, 111 F.3d 184, 187 (1st Cir. 1997).
At the summary judgment stage, the trial court examines the record "in the light most flattering to the non-movant and indulges in all reasonable references in that party's favor. Only if the record, viewed in this manner and without regard to credibility determinations, reveals no genuine issue as to any material fact may *434 the court enter summary judgment." Cadle Co. v. Hayes, 116 F.3d 957, 959-60 (1st Cir. 1997). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). Summary judgment is inappropriate where there are issues of motive and intent as related to material facts. See Poller v. Columbia Broad. Sys., 368 U.S. 464, 473, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (summary judgment is to be issued "sparingly" in litigation "where motive and intent play leading roles"); see also Pullman-Standard v. Swint, 456 U.S. 273, 288, 102 S.Ct. 1781, 72 L.Ed.2d 66 (1982) ("findings as to design, motive and intent with which men act [are] peculiarly factual issues for the trier of fact."); see also Dominguez-Cruz v. Suttle Caribe, Inc., 202 F.3d 424, 433 (1st Cir. 2000) (finding that "determinations of motive and intent ... are questions better suited for the jury"). "As we have said many times, summary judgment is not a substitute for the trial of disputed factual issues." Rodríguez v. Municipality of San Juan, 659 F.3d 168, 178-179 (1st Cir. 2011) (internal quotations and citations omitted). Conversely, summary judgment is appropriate where the nonmoving party rests solely upon "conclusory allegations, improbable inferences and unsupported speculation." Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 95 (1st Cir. 1996). However, while the Court "draw[s] all reasonable inferences in the light most favorable to [the non-moving party] ... we will not draw unreasonable inferences or credit bald assertions, empty conclusions or rank conjecture." Vera v. McHugh, 622 F.3d 17, 26 (1st Cir. 2010) (internal quotations and citation omitted). Moreover, "we afford no evidentiary weight to conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative." Tropigas De P.R. v. Certain Underwriters at Lloyd's of London, 637 F.3d 53, 56 (1st Cir. 2011) (internal citations omitted).
Further, the Court will not consider hearsay statements or allegations presented by parties that do not properly provide specific reference to the record. See D.P.R. CIV. R.56(e) ("The [C]ourt may disregard any statement of fact not supported by a specific citation to the record material properly considered on summary judgment. Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir. 1990) ("Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment."). The [C]ourt shall have no independent duty to search or consider any part of the record not specifically referenced.");[1] see also Morales v. A.C. Orssleff's EFTF, 246 F.3d 32, 33 (1st Cir. 2001) (finding that, where a party fails to buttress factual issues with proper record citations, judgment against that party may be appropriate).
III. ANALYSIS
A. Teamcare's Medicare claims are time-barred
This Court has previously determined that the filing of the administrative complaint *435 before ASES prior to commencing the instant action tolled Teamcare's Reform claims.[2] (Docket No. 46). Humana now argues in its Motion for Summary Judgment that Teamcare's "Medicare claims were not subject to the administrative procedure at ASES," and as a result, "Teamcare's filing before ASES did not and could not have tolled the statute of limitations for these claims." (Docket 83 at 6). It follows that, the Court must now examine whether Teamcare's Medicare claims were also subject to the administrative procedure at ASES enabling that the three-year statute of limitations period was also tolled for these claims.
In the case at bar, the allegations contained in Teamcare's administrative complaint were specifically limited to services provided to Reform members. (Docket No. 86, Exhibit C). First, Teamcare alleges in the administrative complaint that the parties agreed through the Agreement that "Teamcare would provide specialty pharmacy services for members of Humana, more specifically Puerto Rico Reform members ." (Id. at ¶ 1)(emphasis added). Second, Teamcare asserts in the complaint that Humana continuously breeched the terms of the Agreement "[d]uring the time that TeamCare provided services (medications) to the Reform members that Humana was responsible to manage." (Id. at ¶ 2)(emphasis added). Most notably, Teamcare requested damages for $105,623.73 representing "only the contractual fees for services that TeamCare provided to members of Humana's Reform Program ." (Id. at ¶ 6)(emphasis added). Therefore, as can be readily determined by Teamcare's allegations in the administrative complaint, this Court finds that the complaint was limited to Reform claims and did not encompass Medicare claims.
As an alternative argument, Teamcare argues that the Medicare claims nonetheless relate back to the original administrative complaint. (Docket No. 94 at 3). Teamcare refers to a letter the company sent to Humana, on June 23, 2010, after the administrative complaint was filed that expressly referenced Humana's breach of contract for both Reform and Medicare claims. (Id. ) According to Teamcare, this letter is sufficient for the Medicare claims to relate back to the administrative complaint for statute of limitations purpose. (Id. ).
The "relation back doctrine" derives from Federal Rule of Civil Procedure 15(c) whereby amended pleadings may be deemed to "relate back" for statute of limitations purposes to the date of the pleading if certain conditions are met. Marcoux v. Shell Oil Prods. Co. LLC, 524 F.3d 33, 41 (1st Cir.2008). Pursuant to Rule 15(c)(1)(B), an amended complaint relates back to a prior complaint where "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out-or attempted to be set out-in the original pleading."
The rule clearly states that only "an amendment to a pleading relates back to the date of the original pleading" when the requirements set forth by the rule are met. Fed. R. Civ. P. 15(c)(1)(B). Teamcare never amended the administrative complaint.
*436 Instead, the company sent a letter to Humana that referenced "Medicare Advantage" in one sentence. (Docket No. 95, Exhibit 2). Accordingly, the Court finds the letter is insufficient to comply with the requirements of the relation back doctrine as established by the Federal Rules of Civil Procedure.
Considering the Medicare claims arose of out events that occurred during 2009 and 2010, then Teamcare had until 2013 to file suit. The instant case, however, was initiated on October 1, 2014. Therefore, the Court finds that all the Medicare claims are time bared and, consequently, dismissed.
B. Teamcare's Reform claims are not time-bared
Previously, on December 14, 2014, Humana presented a Motion to Dismiss for failure to state a claim arguing in part that Teamcare's claims against Humana were time barred. (Docket No. 24). Through an Opinion and Order entered on September 4, 2015, this Court denied in part and held in abeyance Humana's Motion to Dismiss . (Docket No. 35) As a result, the Court ordered the parties to brief the issue of whether Teamcare's filing of the administrative complaint before ASES tolled the applicable three year statute of limitations. (Id. ) After a thorough analysis of the parties' briefs, the Court held that the filing of the administrative complaint tolled the statute of limitations in the instant case. (Docket No. 46). On April 27, 2016, Humana requested this Court to reconsider its decision, which the Court denied on August 30, 2016. (Docket No. 73).
Now, Humana once again argues in its Motion for Summary Judgment that Teamcare's Reform claims are time barred based on grounds that the doctrine of equitable tolling is inapplicable in the instant case. (Docket No. 86 at 7). Humana differentiated its previous attempt by requesting the Court "to consider the uncontested facts of this case" because previously Humana was precluded from bringing facts outside the Complaint as part of its 12(b)(6) motion. (Docket No. 83 at 8). Humana relied on the same case law this Court previously attended when the parties briefed the tolling issue. Nonetheless, Humana refers to new facts that arose after Teamcare filed the Complaint, namely that "[e]ven though Humana specifically asked Teamcare before and during discovery for a response to Humana's evaluation, which was performed almost six (6) years ago, Teamcare simply refused to provide it." (Docket No. 83 at 12). Humana now argues that Teamcare's refusal to respond to Humana's interrogatories requesting an evaluation of the contested claims demonstrates a voluntary disregard that "cannot be considered an 'extraordinary circumstance' so as to apply the doctrine of equitable tolling to Teamcare's administrative process before ASES." (Id. at 13).
The Court finds that the facts Humana refers to are irrelevant for the Court's equitable tolling analysis because Humana refers to facts that occurred after the filing of the instant Complaint. Previously, this Court focused on whether the "internal or administrative proceeding [had] identical purposes as the judicial action" to determine whether the proceeding commenced in ASES tolled the statute of limitations. Diaz Santiago v. Int'l Textiles Prod. of Puerto Rico, 195 D.P.R. 862 (2016) (quoting Maldonado v. Russe, 153 D.P.R. 342, 354 (2001). Consequently, the Court finds that Teamcare's actions after the filing of the Complaint are irrelevant and insufficient to change the Court's previous decision that the statute of limitations was tolled throughout the administrative proceedings.
*437 Therefore, the Court finds that Teamcare's Reform claims are not time bared as the statute of limitations was tolled throughout the administrative proceeding.
C. ASES has exclusive primary jurisdiction over Teamcare's Reform claims
Humana now argues in its Motion for Summary Judgment that ASES has exclusive primary jurisdiction over Teamcare's Reform claims, so these claims should be dismissed to be reviewed in the proper forum. (Docket No. 83 at 13-16). In contrast, Teamcare argues in its Response that no statutory provision expressly confers exclusive primary jurisdiction upon ASES, and further the parties agreed that the jurisdiction for any legal action regarding the Agreement shall be in the courts of the Commonwealth of Puerto Rico, or the federal courts located in San Juan, Puerto Rico. (Docket No. 94 at 9-13).
a. Which forum has jurisdiction
Primary jurisdiction operates to determine whether the judiciary or the agency should make the initial determination on a matter, and applies specifically when the situation presents issues requiring the exercise of administrative discretion. Asoc. Pesc. Punta Figueras v. Puerto del Rey, Inc., 155 D.P.R. 906, 920-21 (2001). That is, this doctrine recognizes the existence of concurrent jurisdiction between the administrative and the judicial forums. Nonetheless, the courts abstain from exercising their jurisdiction, thus allowing the agency or the administrative forum to exercise its primary jurisdiction because the latter is in a better position to entertain the matter in controversy. The determination as to which is the most appropriate forum must be made taking into consideration whether the solution of the matter at hand requires certain skills or expertise and whether or not the agency in question has said skills and expertise. If it is found that the matter in controversy demands a specialized knowledge or expertise for its proper adjudication, and that the agency has this knowledge and expertise, the court then opts to abstain from exercising its jurisdiction. See also Delgado Rodríguez v. Nazario de Ferrer, 121 D.P.R. 347, 353-54 (1988) ; Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716, 723 (1982) ; Lomas de Carolina Corp. v. Tribunal Superior, 101 D.P.R. 574, 575 (1973).
This doctrine is substantially different from the exclusive primary jurisdiction doctrine recognized by the Supreme Court of Puerto Rico in Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. 223, 233 (1994). See also Ferrer Rodríguez v. Figueroa, 109 D.P.R. 398, 401 (1980) ; First Fed. Savs. v. Asoc. de Condómines, 114 D.P.R. 426, 434 (1983). The difference lies in the fact that under the primary jurisdiction doctrine both forums have jurisdiction and the court only needs to determine which is best suited to hear the matter, while under the exclusive primary jurisdiction doctrine the administrative forum or agency is conferred by law exclusive jurisdiction to entertain issues at first instance. That is, only the agency may resolve a matter at first instance, depriving the courts from initially intervening in the same. Ferrer Rodríguez v. Figueroa, 109 D.P.R. 398, 401 (1980).
Furthermore, the exhaustion of administrative remedies doctrine serves the purpose of determining at what stage of the proceedings pending before the agency may a litigant resort to the courts. Ortiz v. Panel F.E.I., 155 D.P.R. 219, 240-41 (2001). Hence, an examination as to its possible application arises when, after an agency has initiated a proceeding or action, judicial intervention is sought to review findings or to obtain judicial remedy, prior to the termination of the entire administrative *438 proceeding. Pursuant to this doctrine, the courts are required to abstain from reviewing government agency actions until the affected person exhausts all the available administrative remedies and the agency has rendered a final decision. If the administrative remedies are not exhausted, the court will lack jurisdiction to entertain the question at issue. Guzman v. E.L.A., 156 D.P.R. 693, 711 (2002).
b. Applicable Statutes and Regulations
In the same manner, the Supreme Court of Puerto Rico has held that the exclusive primary jurisdiction doctrine applies when the legislature entrusts an agency exclusively with jurisdiction over particular matters through the express terms of a statute. Junta Dir. Cond. Montebello v. Fernández, 136 D.P.R. at 231. More simply expressed, to determine that an agency has exclusive primary jurisdiction it is necessary that a law expressly state exclusively. Mun. Arecibo v. Mun. de Quebradillas, 161 D.P.R. 109, 113 (2004).
Act No. 72 of September 7, 1993, as amended, 24 L.P.R.A. §§ 7001 et seq. established the creation of the Puerto Rico Health Insurance Administration ("ASES"). The primary purpose of ASES is to "implement, administer, and negotiate a health insurance system by means of contracts with insurers and/or Health Services Organizations" in order to "give all the residents of the Island access to quality medical and hospital care, regardless of the financial condition and ability to pay of those who require them". 24 L.P.R.A. § 7001.
Regarding procedures for complaints, Act No. 72 provides the following:
The Administration shall require insurers, providers, and health service organizations with whom it contracts to establish the procedures to handle and resolve complaints from the participating providers and the beneficiaries.
The Administration shall establish guidelines for the resolution of complaints, which shall guarantee due process of law. The findings made regarding these complaints shall be appealable before the Administration , as provided by regulations or the signed contract. The final findings of the Administration shall be reviewable by the Court of Appeals .
24 L.P.R.A. § 7036 (emphasis added).
In order to secure the adequate implementation of Act No. 72, ASES adopted Regulation No. 5253. Specifically, Article XVII regulates the procedures for filing complaints or presenting claims before insurers. The article provides that insurers are responsible for establishing adequate procedures to guarantee all beneficiaries and providers the filing, receipt and fast adjudication of all claims. Additionally, in conformity with Act No. 72, the insurers' final decisions regarding claims and complaints are subject to appeal before ASES within thirty (30) days after the date the decision is notified to the beneficiaries. The article further establishes the requirements for the internal adjudicative procedure before ASES. Moreover, Article XIII outlines the rights of providers and establishes that providers have the right to appeal a final determination reached by an insurer to ASES.
Further, ASES issued Normative Letter 98-06 directed towards providers and beneficiaries of the Reform program with the purpose of orienting them about the procedures established for attending claims and grievances. The letter defines "formal grievance" as an action of legal nature initiated by the provider before the insurer alleging a breach of any clause in the existing contract between ASES and the *439 insurer. The Normative Letter states that as part of the procedure, the provider must present a formal grievance to the insurer's claims department or responsible committee. Once the claims department makes a determination, the person responsible must sign the insurer's resolution on the matter and notify the same to the parties within thirty (30) days. The resolution must notify the provider of the right to appeal before ASES within thirty (30) days after the resolution is notified. By the same manner, the provider can appeal a decision to ASES in the event the insurer does not resolve a formal grievance due to inaction or excessive delay.
In conformity with these regulations, Humana has established a Claims Department responsible for overseeing and conducting claim processing in connection with all provider claims for services. (Docket No. 102, Exhibit Q). Additionally, Humana's Claims Department provides evaluations of claims subject to Human's Claims and Grievance Committee for provider Reform claims. (Id. ). Specifically, the Claims and Grievance Committee is in charge of reviewing provider claims, pursuant to Act No. 72. (Id. ) Once this committee reaches a final resolution, the claim can be appealed before ASES. (Id. )
c. Does ASES have exclusive primary jurisdiction?
In the case at hand, there is no genuine dispute as to any material fact. These undisputed facts creates a legal issue as to whether ASES has exclusive primary jurisdiction over claims filed by providers against insurers regarding unpaid Reform claims. This is a question that the highest court of Puerto Rico has yet to answer. In such a situation, it is our obligation to perform a reasonable determination as to how that court, if confronted with the question, would be likely to rule. See Andrew Robinson Int'l, Inc. v. Hartford Fire Ins. Co., 547 F.3d 48, 51 (1st Cir.2008). When making such a determination, we may evaluate a variety of sources, including decisions of the lower courts in Puerto Rico, persuasive adjudications by other courts, scholarly works, and considerations touching upon public policy. See Blinzler v. Marriott Int'l, Inc., 81 F.3d 1148, 1151 (1st Cir.1996). We start close to home. While decisions of a state's intermediate appellate court are not binding on a federal court sitting in diversity, such opinions are entitled to some weight. See West v. AT & T, 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139 (1940) ; CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co., 962 F.2d 77, 91 (1st Cir.1992). Two decisions of the Puerto Rico Court of Appeals, each of which interpret whether ASES has exclusive primary jurisdiction, are instructive to this federal Court.
First, in Concilio de Salud Integral de Loiza, Inc. v. MCS Heath Mgmt. Option Inc., Civil No. KLCE200900792, Court of Appeals' Judgment of August 26, 2009, (2009 WL 5842493), the court specifically addressed the issue of whether ASES had exclusive primary jurisdiction over actions involving Reform claims. In this case, the provider filed suit in the trial court as, even though the provider commenced a formal grievance before the insurer's internal claims department, the insurer delayed excessively in addressing the provider's claims. ( Id. at 2 ). Relying on the provisions of Act No. 72 and Regulation No. 5253 (both discussed above), the court found that both laws conferred upon ASES the faculty to revise final determinations made by an insurer regarding formal grievances presented by providers. ( Id. at 6 ). As per the terms of Article XVII of Regulation No. 5253, the court discussed that ASES's appellate jurisdiction activates when the provider receives the insurer's final resolution of the claims.
*440 ( Id. at 7 ). Thus, in this case, the Puerto Rico Court of Appeals held that the trial court lacked jurisdiction over the breach of contract claim because the applicable statutes and regulations granted ASES with exclusive primary jurisdiction to decide issues involving Reform claims. ( Id. )
By the same token, in Pacientes Beneficiarios y Asegurados, et al. v. Puerto Rico Health Ins. Admin., et al., Civil No. KLAN0401518, Court of Appeals' Judgment of February 9, 2005 (2005 WL 850419), the court focused on the language of Act No. 72, and held that the legislator clearly established that ASES has exclusive primary jurisdiction. ( Id. at 5 ) The court recognized that once the agency adjudicates the claim, then the parties can file suit requesting the trial court to revise the agency's decision. ( Id. ) (relying on specific language of Act No. 72 providing "[t]he findings made regarding these complaints shall be appealable before the Administration.")
d. The Instant Case
These instructive cases set the parameters of our inquiry. In both of them, the Puerto Rico Court of Appeals held that ASES had exclusive primary jurisdiction over actions set forth by providers for breach of contract regarding claims presented by beneficiaries of the government's reform program. There is no record showing either of these two appellate court decisions were appealed to the Supreme Court of Puerto Rico. To reach these conclusions, both appellate panels interpreted the same statutory and regulatory provisions, namely Act No. 72 and Regulation No. 5253. Pacientes Beneficiarios y Asegurados, et al., 2005 WL 850419 at 5 (interpreting section 7036 of Act No. 72); Concilio de Salud Integral de Loiza, Inc., 2009 WL 5842493 at 3-4 (interpreting both section 7036 of Act No. 72 and Regulation No. 5253.)[3]
The Court recognizes the validity of Teamcare's argument that the parties contracted "the jurisdiction for any legal action regarding [the] Agreement shall be in the courts of the Commonwealth of Puerto Rico, or the federal courts located in San Juan, Puerto Rico". (Docket No. 86, Exhibit B at ¶ 11.2). Additionally, the Court considers that "[t]he prevailing view towards contractual forum-selection clauses is that such clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." Silva v. Encyclopedia Britannica, Inc., 239 F.3d 385, 386 (1st Cir.2001) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972) )(internal quotations omitted). In the case at bar, however, the parties also contracted to the following terms:
4.4 Adjudication of Discrepancies
Provider may challenge any claim denied or paid by HUMANA PUERTO RICO within 45 days of payment. In such event, HUMANA PUERTO RICO will review the claim and any additional information submitted by Contracting Provider, and will render a final decision with respect to the claim within 30 days of receipt of such additional information . Provider will have the responsibility to submit any document necessary to process a claim, as requested. Such request should be fulfilled within the parameters of timeframes established by the law. Any claims that do not comply with said parameters, *441 will not be entitled to payment of interest.
(Docket No. 86, Exhibit B at ¶ 4.4)(emphasis added).
As a result, the Court understands that a reasonable interpretation of the Agreement, in order to be consistent with both contractual provisions, is that the parties agreed to first submit their Reform claims under Puerto Rico jurisdiction to Humana's Claims Department, and in the event the procedure resulted unsuccessful, the parties then could file a formal legal action in the state or federal courts of Puerto Rico. This interpretation conforms with the previously discussed Puerto Rico Court of Appeals' decisions as the interpretation validates ASES' primary exclusive jurisdiction over claims involving Reform matters after Humana reaches a final determination on said claims. Concilio de Salud Integral de Loiza, Inc., 2009 WL 5842493 at 7 (noting ASES' jurisdiction activates when insurer notifies to provider its final determination on claims submitted.) Additionally, this interpretation endorses the statutory language of both Act No. 72 and Regulation 5253, which provide that insurers are responsible for establishing adequate procedure for the adjudication of claims, and that findings made regarding complaints from providers shall be appealable before ASES. See 24 L.P.R.A. § 7036 ; Regulation 5253 at 74, 83.
A different interpretation would render the Agreement's "Adjudication of Discrepancies" provision meaningless because the provider would be able to first file suit in court, thus skipping HUMANA's internal grievance procedure clearly described in the Agreement. Considering ASES only has exclusive primary jurisdiction over Reform claims, the Agreement's "Interpretation" provision, which sets forth that jurisdiction for any legal action shall be in the courts of Puerto Rico, is valid and applies to any legal action that could arise from the Agreement other than Reform claims. As such, in order to provide respect to all of the provisions in the Agreement and in conformity with the applicable statutes and regulations, the Court finds a provider must first submit a claim before the insurer, and then appeal the insurer's final decision to ASES, which is the agency with exclusive primary jurisdiction, before filing suit in court.[4]
In the present case, Teamcare never filed a claim requesting payment before Humana's Claims Department. Instead, on March 4, 2011, Teamcare filed an administrative complaint against Humana Health before ASES alleging Humana Health breached the terms of the Agreement by not paying claims for services from October 2009 to July 2010. (Docket 86, Exhibit C). On November 1, 2013, ASES dismissed this administrative complaint due to procedural inactivity and a timely appeal was never filed. (Docket 86, Exhibit K). Consequently, ASES never issued a final order or resolution that included findings of fact and conclusions of law. For the above stated reasons, the Court finds that Teamcare was under the obligation statutorily and by contract to file a formal grievance before Humana's Claims Department in accordance with the Agreement's "Adjudication of Discrepancies" provision.
D. Whether Teamcare's Claims are unwarranted
Humana also argued in its Motion for Summary Judgment that Teamcare did not provide any reasoning or admissible evidence to show that Humana owed the company money. (Docket No. 83 at 17).
*442 Based on the undisputed Second Evaluation, which concluded that Humana did not owe any money to Teamcare, Humana argued summary judgment should be entered in its favor. (Id. ) Conversely, Teamcare argued that Humana did in fact owe the company money. (Docket No. 102 at 13). However, considering the Court has already dismissed Teamcare's claims, it does not reach the merits of whether Teamcare's claims are unwarranted.
IV. CONCLUSION
The Court finds Teamcare's Medicare Claims were not subject to the administrative procedure at ASES, and as a result, the three-year statute of limitations expired in the year 2013. Given the present suit was initiated on October 1, 2014, the Court rules that all the Medicare claims are time bared and, consequently, dismissed. Nonetheless, the Court reaffirms its previous conclusion that Teamcare's Reform claims are not time bared as the applicable three-year statute of limitations was tolled due to the filing of the administrative complaint before ASES. Lastly, pursuant to the applicable statutes, regulations, local case law and the Agreement executed between the parties, the Court holds that a provider must first submit a claim before the insurer, and then appeal the insurer's final decision to ASES, which is the agency with exclusive primary jurisdiction to address controversies involving Reform claims, before filing suit in court. Considering Teamcare never filed a formal grievance before Humana, and that ASES dismissed the claim for inactivity, this Court lacks jurisdiction at this time to address Reform claims. Therefore, Humana's Motion for Summary Judgment (Docket No. 83) is GRANTED .
IT IS SO ORDERED.

D.P.R. Civ. R. 56(b), often referred to as the anti-ferret rule, requires the party moving for summary judgment to submit a "separate, short, and concise statement of material facts, set forth in numbered paragraphs, as to which the moving party contends there is no genuine issue of material fact." Similarly, the non-moving party is required to submit a counter-statement "admit[ing], deny[ing] or qualify[ing] the facts by reference to each numbered paragraph in the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by reco citation." D.P.R. Civ. R. 56(c).

Article 1867 provides, in part, that all breach of contract actions "for payments to apothecaries for medicines which they have supplied" are subject to a three-year statute of limitations. 31 L.P.R.A. § 5297. This Court already found that the three years statute of limitations governs the parties' dispute regarding the nonpayment of the goods supplied by Teamcare to Humanas' insured. (Docket No. 35). In the same manner, the Court found that Article 1867 governs the parties' dispute with regards to the "services" rendered by Teamcare to Defendants' insured. (Id. )

Should the instant case be appealed, the prevailing party in the instant case is ordered to provide the translation of both court of appeals decisions cited in Spanish, as well as Regulation 5253 and Normative Letter 98-06.

At this time, this Court makes no determination as to the timeliness of Teamcare's claims before ASES, or whether ASES will grant or deny Teamcare's claims.